UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
1:17-CV-00699

| | |
|---|---|
| MICHELE SHAW, | ) |
| | ) |
| Plaintiff, | ) |
| | ) AMENDED |
| vs. | ) COMPLAINT |
| | ) |
| NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, | ) |
| | ) |
| Defendant. | ) |

COMES NOW PLAINTIFF, complaining of the acts of Defendant, alleges and says that:

1. Plaintiff is a citizen and resident of Harnett County, North Carolina.

2. Upon information and belief, Defendant is an agency of the State of North Carolina with offices and facilities throughout the State of North Carolina. Defendant is subject to the jurisdiction of this Court and is an "employer" as defined by 42 U.S.C. §2000e(b) and has had fifteen (15) or more employees for each working day in each of the twenty (20) or more calendar weeks in the current calendar year.

FIRST CAUSE OF ACTION: VIOLATION OF TITLE VII

3. That, Plaintiff worked for Defendant for many years in a variety of capacities.

4. That in 2016, she filed a charge of discrimination with the EEOC based upon race, sex, age, and retaliation for conduct of her management team and creation of a hostile work environment. Plaintiff is a Caucasian female over the age of 40.

5. Since complaining of the disparate treatment and denial of a transfer based upon her gender, age, and race, she received additional scrutiny from her management team,

intimidation, was demoted, and excluded from vital communication within her department. The disparate treatment of younger, males included less severe disciplinary action for more egregious behavior than the behavior allegedly performed by Plaintiff, allowing transfers (African American male-Joemann Durgin) when Plaintiff was denied. Moreover, false allegations brought against Plaintiff by an African American coworker (Tiffany Womack) were accepted without question or investigation while Plaitniff's response was not initially believed.

Further, Plaintiff's duties were curtailed more severely during an investigation than the duties of African American coworkers under investigation. Plaintiff was taken away from direct inmate contact which made performance of her duties often impossible. The African American employees under investigation were not treated in this manner. Moreover, while she remained under the ban regarding inmate contact, Plaintiff was required by her manager, Captain Raing, several times to have inmate contact in the form of front gate duty despite her protestations that doing so violated the terms of her disciplinary investigation and would yield further disciplinary action against her.

The adverse treatment has come from her supervisor, the manager of her Department, and the Human Resources Department. Said conduct of Defendant's employees was responsible for creating an intimidating, hostile, and offensive work environment for the Plaintiff. Investigations regarding Plaitniff's conduct were swift and intense while her requests for investigation of younger, male and African American employees were delayed and/or dismissed as unsubstantiated. Plaintiff requested permission to discipline Officer

2

Harris (African American female) due to her undue inmate familiarity and insubordinate behavior and her manager, Captain Raing, denied the request despite sufficient documentation to support the disciplinary action.

On another occasion, Plaintiff was charged with assaulting an inmate while she attempted to assist him during a drug overdose seizure while the three male coworkers also involved were not charged. The charges were eventually dismissed as Plaintiff was performing her duties in the best interests of the inmate and the Defendant.

6. Plaintiff repeatedly sought assistance and an end to the discrimination and retaliation, including an internal grievance. Upon information and belief, no action was taken by Defendant to alleviate the discrimination and hostile work environment for Plaintiff. Defendant was aware of the retaliation and discrimination experienced by Plaintiff through her daily meetings with Lieutenants Matthews and Wilkerson yet Defendant failed to take appropriate action to correct the situation.

7. That Plaintiff filed an additional charge of discrimination with the EEOC based upon said retaliation and demotion as well as the violation of her rights by the Defendant requiring her to appear on site for several meetings despite Plaintiff's approved Family and Medical Leave. This charge was filed on or about June 10, 2016. Upon information and belief, the evidence obtained through the grievance process confirmed that Plaintiff should not have been demoted.

8. That at all times relevant herein, Plaintiff was performing her duties competently, satisfactorily, in compliance with state and federal regulations, and to the best of her

abilities.

9. That as a direct and proximate result of said conduct, Plaintiff was constructively discharged from her employment with Defendant on or about June 30, 2016 through the internal grievance process associated with her demotion earlier that year.

10. That a third retaliatory charge was filed by Plaintiff on or about August 17, 2016 for retaliation based upon Defendant's interference with her new employment at Central Carolina Community College. Defendant, by and through its duly authorized agents, told officials at Central Carolina Community College that Plaintiff could not teach their employees due to an active disciplinary action in her personnel file when in fact they knew such information to be false.

11. At all times relevant herein, Plaintiff's supervisors by whom she was discriminated against, demoted, harassed, and intimidated as well as those managers to whom she complained were agents of the Defendant, duly authorized and acting within the scope of their employment. Further, George Solomon and Monica Shabo, were acting as duly authorized agents of Defendant when they interfered with Plaintiff's new position at Central Carolina Community College.

12. The conduct of Defendant, as alleged herein, not only violates Title VII of the Civil Rights Acts of 1964 and 1991, as amended, but also violates the public policy of the State of North Carolina.

13. On or about February 29, 2016 and June 10, 2016, within 180 days of the last discriminatory actions of Defendant, Plaintiff filed charges in writing with the Equal

4

Employment Opportunity Commission (hereinafter "EEOC") charging Defendant with discrimination, failure to transfer, retaliation in the creation of a hostile work environment, retaliatory demotion, failure to communicate and constructive termination associated with her participation in protected activity while employed. Further, the charge of August 17, 2016, based upon retaliation in ongoing employment, was also filed within 180 days of the last act of retaliation by Defendant. More than 180 days have elapsed since Plaintiff filed these charges with the EEOC. On or about April 14, and May 12, 2017 Plaintiff was issued a right to sue letters on said charges of discrimination from the local office of the EEOC. At this time, Plaintiff has decided to institute a private lawsuit, and is filing same within ninety (90) days of receipt of the EEOC's right to sue letter.

14. Said discrimination, creation of a hostile environment, demotion, and retaliation experienced by Plaintiff from Defendant, by and through its duly authorized agents, is the direct and proximate cause of injury to Plaintiff in an amount in excess of $10,000.00 representing lost opportunities and benefits, lost wages, as well as emotional distress.

SECOND CAUSE OF ACTION: TORTIOUS INTERFERENCE WITH CONTRACT

15. The allegations set forth in paragraphs one through fourteen are realleged and incorporated by reference as if fully set forth.

16. That after her constructive termination from her employment with Defendant, Plaintiff continued her work as an adjunct instructor with Central Carolina Community College. Said employment pre-dated her termination and she was a well respected instructor at the institution.

17. That on or about July, 2016, Plaintiff was informed by her supervisor, Wayne Norris, that she could no longer teach Defendant's employees at Central Carolina Community College due to objections by George Solomon, Director of Prisons, through Monica Shabo. This action terminated Plaintiff's employment with the institution for anything but limited CPR classes.

18. At all times relevant herein, Plaintiff's supervisory team identified above were agents of the Defendant, duly authorized and acting within the scope of their employment.

19. That said conduct was done intentionally, or with a reckless disregard for the rights of the Plaintiff.

20. That, upon information and belief, said conduct was performed for the express purpose of causing the termination of Plaintiff's employment.

21. That said agents of Defendant tortiously interfered with the valid employment relationship and contract of the Plaintiff with Central Carolina Community College.

22. That as a direct and proximate result of the Defendant's conduct, by and through its duly authorized agents, Plaintiff has suffered emotional distress, lost wages and benefits, embarrassment, harm to her professional reputation, and been injured in other ways to be proven at trial in an amount in excess of $10,000.00.

23. Upon information and belief, Defendant has waived any claims for governmental immunity by the purchase of insurance and/or participation in a risk pool to indemnify it for said conduct by and through its duly appointed agents.

## THIRD CLAIM FOR RELIEF: SECTION 1981 and 1983

24. For the purposes of this claim, Plaintiff incorporates herein by reference paragraphs one through twenty three above of the Complaint as if the same were fully set forth herein.

25. Upon information and belief, acting in bad faith, Defendant arbitrarily harassed and intimidated Plaintiff in retaliation for her participation in reporting discrimination and violations of Title VII of the Civil Rights Act of 1964, as amended and Section 1981 of the Civil Rights Act of 1871, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981 ("Section 1981"). Plaintiff, as a member of a protected class, seeks declaratory, injunctive and other equitable relief, and compensatory damages based on Defendant's continuing deprivation of her civil rights as accorded to her by the above-cited federal statutes.

26. Further, That Defendant has not followed the constitutional dictates of due process of law as guaranteed by Article I, Section 19 of the Constitution of North Carolina and the United States Constitution and has violated the Plaintiff's right to due process in violation of 42 U.S.C. § 1983. The acts of the Defendant, by and through its duly appointed agents, constitute a denial and a conspiracy to deprive Plaintiff of rights, privileges, and immunities guaranteed to Plaintiff by the Constitution and laws of the United States as well as the laws and policies of the State of North Carolina.

27. That the Defendant's conduct as herein set out was purposeful, deliberate, intentional, and done with reckless disregard of the rights of Plaintiff, such that Plaintiff is entitled to recover punitive damages.

28. In taking the aforesaid actions, Defendant acted intentionally under color of law of the State of North Carolina within the meaning of 42 U.S.C. §1983.

29. As a direct result of the aforesaid unlawful actions, Plaintiff has suffered loss of opportunity, job security, wages, and professional status in an amount in excess of $10,000.00. The amount of damages will be more fully described when known.

<u>FOURTH CLAIM FOR RELIEF: RIGHT TO EQUITABLE RELIEF</u>

30. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, especially with respect to the tortious interference with contract claims, and this suit for declaratory and injunctive relief is the only means for securing adequate relief.

WHEREFORE, Plaintiff prays the Court as follows:

1. That Defendant be ordered to cease all retaliation and discrimination and to eliminate the hostile environment which exists in its facility;

2. That Defendant be ordered to reinstate Plaintiff's good standing with the Defendant and benefits associated therewith;

3. That she recover judgment against Defendant in an amount in excess of $10,000.00;

4. That she recover the costs of this action, including reasonable attorney's fees; and

5. For such other and further relief as to the Court may seem just and proper.

This the   12th    day of July, 2018.

                                                           /s/Nancy P. Quinn
                                                           Nancy P. Quinn,
                                                           Attorney for Plaintiff
                                                           NC Bar No.: 16799
                                                           315 Spring Garden St., Suite 1D
                                                           Greensboro, NC 27401
                                                           Telephone: (336) 272-9072
                                                           Npquinn@triadbiz.rr.com

<u>Certificate of Service</u>

The undersigned hereby certifies that a copy of the Plaintiff's Amended Complaint was served on the Defendant electronically by the CM/ECF system, addressed as follows:

Ms. Tamika Henderson
NC Dept. Of Justice
P.O. Box   629
Raleigh, NC 27602
email: tlhenderson@ncdoj.gov

This the 12th day of July, 2018.

           /s/ Nancy P. Quinn
Nancy P. Quinn,
Attorney for Plaintiff
NC Bar No.:16799
315 Spring Garden St., Ste 1D
Greensboro, NC 27401
Telephone: (336)272-9072
Email: npquinn@triadbiz.rr.com

Case 1:17-cv-00699-TDS-JLW   Document 32   Filed 07/12/18   Page 10 of 10